*Arrest Warr. issued 1·21·14*

FILED IN CHAMBERS
U.S.D.C. Atlanta

JAN 21 2014

JAMES N. HATTEN, Clerk
By: [signature]
Deputy Clerk

## United States District Court
### NORTHERN DISTRICT OF GEORGIA

ORIGINAL

UNITED STATES OF AMERICA

v.

APOLLO E. NIDA

**CRIMINAL COMPLAINT**
Case Number: 01:14-MJ-059

UNDER SEAL

I, the undersigned complainant being duly sworn, state the following is true and correct to the best of my knowledge and belief. From on or about September 1, 2010 in Fulton County, in the Northern District of Georgia, and elsewhere, defendant did, knowingly and wilfully execute and attempt to execute a scheme to defraud federally insured financial institutions by depositing stolen and fraudulently obtained checks and fraudulently obtained auto loan proceeds into bank accounts opened in the stolen identities of real persons, and conspire with others to do so, and knowingly convert to his use and the use of others stolen and fraudulently obtained United States Treasury Checks,

in violation of Title 18, United States Code, Section(s) 641, 1028A, 1344 and 1349.

I further state that I am a Special Agent of the United States Secret Service and that this complaint is based on the following facts:

PLEASE SEE ATTACHED AFFIDAVIT

Continued on the attached sheet and made a part hereof.   Yes

[signature]
Signature of Complainant
Alexandre Herrera

Based upon this complaint, this Court finds that there is probable cause to believe that an offense has been committed and that the defendant has committed it. Sworn to before me, and subscribed in my presence

January 21, 2014                               at   Atlanta, Georgia
Date                                                City and State

GERRILYN G. BRILL
UNITED STATES MAGISTRATE JUDGE                  [signature] Gerrilyn Brill
Name and Title of Judicial Officer              Signature of Judicial Officer
AUSA Alana R. Black / 2013R0195

# AFFIDAVIT IN SUPPORT OF
# AN APPLICATION FOR AN ARREST WARRANT

I, Alexandre Herrera, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this Affidavit in support of an application for a warrant for the arrest of Apollo E. Nida (hereinafter "NIDA").

2. I am a Special Agent with the United States Secret Service and have been since April 2011. I am presently assigned to the Atlanta Field Office, where I am part of the Counterfeit and U.S. Treasury Check Squad. I specialize in the investigation of various financial crimes, including bank fraud, identity theft, counterfeit currency, and other offenses. I am a graduate of Pepperdine University where I received a Bachelor's Degree. I am also a graduate of the Federal Law Enforcement Training Center in Glynco, GA and the United States Secret Service's James J. Rowley Training Center in Beltsville, MD. At these facilities, I underwent a seven month training program that addressed investigation techniques and other matters. That training included instruction on how offenders use computers and the internet during the commission of criminal activities.

3. In connection with official duties, your affiant investigates criminal violations of various federal fraud and financial related offenses, including violations of Title 18, United States Code, Sections 641, 1028A, 1341, 1343, 1344, 1349, 1956, and 1957. I have received training and experience on the job, both formal and informal, in the enforcement of fraud laws related to identity theft, tax return fraud, bank fraud, mail fraud, wire fraud, money laundering,

counterfeiting, and access device fraud. I am familiar with and have utilized many of the traditional methods of investigation, including, without limitation, visual surveillances, electronic surveillances, informant, suspect, and witness interviews, consensually recorded telephone conversations, covert audio and video surveillances, defendant debriefings, the use of confidential sources, undercover operations, examinations of bank and financial documents, the execution of search warrants, and the controlled purchases of contraband and other items used during the commission of federal offenses.

4. The facts set forth in the Affidavit are based on (a) my personal observations; (b) my training and experience; (c) information obtained from other federal and state agents, and witnesses including bank investigators, identity theft victims, UPS store operators, and other persons; and (d) documents and records obtained from these persons, and from public and other sources. Because your affiant submits this Affidavit for the limited purpose of showing probable cause, I have not included each and every fact that I have learned in this investigation in this Affidavit. Additionally, unless indicated otherwise, all statements and conversations described herein are related in substance and part only rather than verbatim.

5. Based on my training and experience and the facts as set forth in this Affidavit, there is probable cause to believe that NIDA has committed violations of Title 18, United States Code, Section 641 (embezzlement, theft and conversion of public money); Title 18, United States Code, Section 1028A (aggravated identity theft); Title 18, United States Code, Section 1344 (bank fraud); and Title 18, United States Code, and Section 1349 (conspiracy).

## PREDICATE OFFENSES

6. Title 18, United States Code, Section 641 states:

> Whoever embezzles, steals, purloins, or knowingly converts to his use or the use of another, or without authority, sells, conveys or disposes of any record, voucher, money or thing of value of the United States or of any department or agency thereof, or any property made or being made under contract for the United States or any department or agency thereof; or Whoever receives, conceals, or retains the same with intent to convert it to his use or gain, knowing it to have been embezzled, stolen, purloined or converted – shall be fined under this title or imprisoned not more than ten years, or both . . . .

18 U.S.C. § 641.

7. Title 18, United States Code, Section 1028A states, in relevant part:

> Whoever, during and in relation to any felony violation enumerated in subsection (c), knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person shall, in addition to the punishment provided for such felony, be sentenced to a term of imprisonment of 2 years.

18 U.S.C. § 1028A.

8. Title 18, United States Code, Section 1344 states:

> Whoever knowingly executes, or attempts to execute, a scheme or artifice –
> (1) to defraud a financial institution; or (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises; shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

18 U.S.C. § 1344.

9. Title 18, United States Code, Section 1349 states:

3

> Any person who attempts or conspires to commit [mail fraud, wire fraud, or bank fraud] shall be subject to the same penalties as those prescribed for the offenses, the commission of which was the object of the attempt or conspiracy.

18 U.S.C. § 1349.

## PROBABLE CAUSE

10. All of the banks listed and discussed below, were federally insured during the time of the frauds detailed herein.

11. In February of 2012, your affiant began to investigate the criminal activities of Gayla St. Julien (née O'Neal), hereinafter ST JULIEN, when an investigator with JP Morgan Chase Bank (JPMC) advised that they were investigating an unknown female suspect in the Atlanta area that used four (4) bank accounts, opened with two (2) stolen identities of real persons, to commit bank and check fraud. The JPMC bank investigator asked for assistance from the United States Secret Service - Atlanta Field Office (USSS) to identify the suspect and investigate the fraudulent activity.

12. Later in February of 2012, your affiant positively identified ST JULIEN as the unknown female suspect after surveillance and further investigation. During the course of the investigation from February of 2012 thru September of 2013, your affiant learned of multiple bank accounts at Bank of America, JP Morgan Chase, Regions Bank, SunTrust Bank and Wells Fargo Bank, all opened in the names of stolen identities, operated by ST JULIEN, and utilized to commit fraudulent activities. The following paragraphs (14 – 21) include a brief summary of a few out of more than forty (40) bank accounts identified in this investigation as fraudulent:

4

13. Bank accounts in the name of Bynum Financial Inc. were opened on 01/12/10 at Bank of America and JP Morgan Chase Bank using the stolen identity of Tricia D. These accounts had over $725,000.00 in deposits from fraudulent activity, which includes funds laundered from other fraudulent accounts, stolen U.S. Treasury checks, and Delta Airlines checks.

14. Bank accounts in the name of Goodwin Automall Inc. were opened at Bank of America and JP Morgan Chase Bank on 07/07/10 and 07/01/10, respectively, using the stolen identity of Candace O. These accounts had over $600,000.00 in deposits from fraudulent activity, which includes funds laundered from other fraudulent accounts and fraudulent auto loans.

15. Bank accounts in the name of North Point Volvo Inc. were opened on 02/10/11 at JP Morgan Chase Bank using the stolen identity of Linda S-K. These accounts had over $271,165.02 in deposits from fraudulent activity, which includes twenty-two (22) stolen U.S. Treasury checks.

16. Bank accounts in the name of Reliance Financial Tax Group Inc. were opened on 02/24/10 at Bank of America and JP Morgan Chase Bank using the stolen identity of Kelly W. These accounts had over $800,000.00 in deposits from fraudulent activity, which includes funds laundered from other fraudulent accounts and multiple stolen U.S. Treasury checks, among other items.

17. Bank accounts in the name of Signature Luxury Imports Inc. were opened on 03/09/10 at JP Morgan Chase Bank using the stolen identity of Karen K. These accounts had

over $277,000.00 in deposits from fraudulent activity, including five (5) fraudulent auto loan checks.

18. Bank accounts in the name of Signature Tax Collections Inc. were opened between 05/12/12 and 05/21/13 at Bank of America, SunTrust Bank, Regions Bank and Wells Fargo Bank using the stolen identity of Vanessa J., Debra K., and Randall M. These accounts had over $100,000.00 in deposits from fraudulent activity.

19. A bank account in the name of Universal Tax Group Inc. was opened at JP Morgan Chase Bank on 11/23/10 using the stolen identity of Angie R-C. This account had $54,510.29 in deposits from fraudulent activity.

20. A bank account in the name of Tamal R. was opened at BB&T on 12/14/11 and Wells Fargo Bank on 02/02/12 using the stolen identity of Tamal R. These accounts had over $100,000.00 in deposits from fraudulent activity.

21. Investigation, including review of law enforcement databases and driver's license records, revealed that the identities used to operate the above bank accounts were stolen from real persons.

22. In April of 2012, during my investigation of ST JULIEN, I learned from Investigator Monty Mohr, Director of the Georgia Governor's Office of Consumer Protection (GOCP), that his agency had an ongoing investigation, jointly with Special Agent (SA) Stephen Spivey (USSS), that coincided with mine. Inv. Mohr and SA Spivey provided your affiant with details of their investigation including information about two fake businesses, Onyx Collections & Locators in the stolen identity of Robert W. and Reliance Recovery & Collections Group in the stolen identity of Molly P., which were set up and utilized to illicitly obtain personal

identifying information of individuals. Your affiant provided Inv. Mohr and SA Spivey with the true identity of their unknown female suspect, ST JULIEN.

23. When I describe these businesses as "fake", what I mean is that while they may have been validly organized as entities with the Georgia Secretary of State, they existed for a purpose other than the apparent business purpose implied by the entity name. In other words, I believe Onyx Collections & Locators and Reliance Recovery & Collections Group were set up for the purpose of obtaining access to LexisNexis, Equifax, and similar databases, rather than for the purpose of earning profits through engaging in debt collection activities.

24. The first fake business was Onyx Collections & Locators. Onyx Collections & Locators illicitly gained access by obtaining accounts at the databases LexisNexis and Equifax beginning in the middle of 2009. The Onyx account, in the stolen identity of Robert W., was used to make illicit inquiries to LexisNexis and Equifax to successfully obtain personal identifying information of thousands of individuals. On April 18, 2011, Inv. Mohr located the prior office location for Onyx Collections & Locators at 6961 Peachtree Industrial Boulevard, suite 209, Norcross, GA based on a LexisNexis search. Inv. Mohr obtained a copy of a lease in the name of Onyx Investigations from a property manager at Safeway Group, the landlord of the office suite at 6961 Peachtree Industrial Blvd., Suite 209, Norcross, GA.

25. On April 22, 2011, Inv. Mohr and SA Spivey located a mail forward to address for Onyx Collections & Locators at an UPS Store (#2121) mailbox at 931 Monroe Dr., suite 102-A, Atlanta, GA. This UPS Store had an active mailbox leased to Onyx Collections & Locators Service with account owner Candace O. Further investigation by your affiant revealed that the identity of Candace O. was stolen from a real person and being used by ST JULIEN for this

mailbox and multiple bank accounts in the name of Goodwin Automall Inc. at Bank of America and JP Morgan Chase Bank.

26. The second fake business was Reliance Recovery & Collections Group. The GOCP conducted an undercover operation against ST JULIEN on June 7, 2011 at 217 Arrowhead Blvd., Jonesboro, GA. During this operation, ST JULIEN posed as the stolen identity of Molly P., while representing Reliance Recovery & Collections Group attempting to obtain an account with LexisNexis. Before granting access to its databases to a potential customer, LexisNexis has a contractor verify certain information about the customers. At least some of these verifications involve an office inspection and personal interview. The undercover operation conducted by the GOCP involved a state law enforcement officer standing in for the LexisNexis contractor to perform the inspection and interview.

27. Your affiant reviewed the LexisNexis and Equifax database inquiries made by Onyx Collections & Locators that were obtained by Inv. Mohr and SA Spivey early on in their investigation. Many of the stolen identities utilized by ST JULIEN to open bank accounts and utilized in the scheme to obtain fraudulent auto loan checks that were deposited into the bank accounts were obtained from the LexisNexis and Equifax inquiries illicitly made by Onyx Collections & Locators.

28. LexisNexis is a database that, among other data, contains personal identifying information for practically any person of record in the U.S. LexisNexis is often used by law enforcement to obtain information to assist their investigations. Equifax is a credit reporting agency that maintains and produces consumer credit history reports of individuals.

8

29. ST JULIEN was arrested on 09/11/13 by the USSS via a federal arrest warrant from a Criminal Complaint in the Northern District of Georgia, applied for by your affiant. In an interview conducted by your affiant, post Miranda Rights Warning and Waiver, ST JULIEN implicated NIDA as orchestrating many of the fraudulent schemes that she participated in since 2009 and included in your affiant's investigation.

30. According to a NCIC criminal history report, ST. JULIEN has prior fraud and identity theft convictions: 1st Degree Forgery on 05/25/88 in Fulton County (GA) and a federal conviction for Title 18 USC 922(G)(1) (Felon Possession of Firearm), 1028(A)(5) (ID Fraud), 1029(A)(3) (Access Device Fraud), and 408(A)(7)(C) (SSN Number Fraud) on 08/29/03 in the U.S. District Court for the District of Nevada.

31. When ST. JULIEN was released from custody on these 2003 federal charges, her supervised release was subsequently revoked in July 2007, for continuing to negotiate counterfeit payroll business checks in stolen identities in Alabama in 2005. ST. JULIEN served time in AL from 10/1/05 until 3/8/07, when she was released by AL into federal custody on the supervision release violation warrant. She was released from federal custody on the supervised release violations on 10/4/07. ST JULIEN last arrest was by the USSS on 09/11/13, and ST JULIEN is scheduled to be sentenced in that case in the Northern District of Georgia in March of 2014.

32. From 09/11/13 to 09/13/13, ST JULIEN continued to cooperate with agents of the USSS by participating in interviews with your affiant and Special Agent Mike Paulhus (USSS). ST JULIEN also made consensual recorded phone calls to NIDA during which NIDA discussed details of their current fraudulent schemes. During the interviews, ST JULIEN said that she first met NIDA, when she was recruited by a mutual friend, on or about September of 2009 at an

9

office suite where he was already operating a fraudulent scheme. ST JULIEN said that NIDA explained to her that day how his scheme worked including how he gained access to LexisNexis under false businesses, like debt collection and skip-tracing businesses, to steal identities to use to commit financial fraud.

33. ST JULIEN described the office location as being on the second level of a two-story red brick building with office suites off of Peachtree Industrial Blvd. Northeast of Atlanta off of I-85. This description is an accurate description of the office suite occupied by Onyx Investigations at 6961 Peachtree Industrial Blvd., Norcross, GA during 2009 and 2010. ST JULIEN described multiple fraudulent schemes that she has participated in from 2009 to present that were orchestrated by NIDA.

34. ST JULIEN said that NIDA stole the identities of people to use in his fraudulent schemes from LexisNexis, Equifax, and Mircrobilt databases. ST JULIEN said that NIDA arranged her to meet with site visit auditors on at least two separate occasions in order to gain access to LexisNexis and Microbilt, and she said she was successful each time.

35. Microbilt is a company that provides consumer credit reports from PRBC, Equifax, Experian and TransUnion as well as business reports from Dun & Bradstreet, Experian Business, Equifax Business and Paynet.

36. I showed ST JULIEN a paper with a list of stolen identity names, and ST JULIEN instantly recalled using the names in this scheme with NIDA. ST JULIEN admitted to using Candace O., Bobbie C., Kelly W., Molly P., Linda S-K, Tricia D., and Karen K.

37.     ST JULIEN also admitted to using UPS mailboxes with some of these names in the scheme as well. ST JULIEN said that she used the stolen identity of Karen K. as well, and pointed to a signature from one of the fraudulent bank accounts, Signature Luxury Imports, and said that was me. ST JULIEN said that she opened and operated the Signature Luxury Imports, Bynum Financial, and Reliance Financial Tax Group bank accounts under NIDA's direction. ST JULIEN said that she deposited and withdrew the funds from several auto loan checks that were provided to her by NIDA. ST JULIEN said that NIDA did all the paperwork to acquire the fraud auto loan checks, and that her role was only the executor. ST JULIEN described herself as NIDA's "right hand b****" in executing the legwork of his fraud schemes.

38.     According to ST JULIEN, the two locations NIDA used as fake business addresses to set up and gain access to the databases were on: 1) Peachtree Industrial Boulevard in Norcross; and 2) Arrowhead Road in Jonesboro. ST JULIEN said she was familiar with Onyx being the business name NIDA used to set up and gain LexisNexis access when they were first introduced four years ago. ST JULIEN said that Reliance Recovery, at the Jonesboro address, was the other business name that NIDA used to gain database access.

39.     ST JULIEN said that the last time she met with NIDA was the previous Friday, September 6, 2013 at a Kroger parking lot near Stewart Ave. in Atlanta. ST JULIEN showed us a picture on her cell phone that she took while meeting with NIDA recently. The picture showed NIDA putting gasoline into a new white 4-door BMW, that she said was his car. ST JULIEN said that at that meeting, she gave him $5,000.00 in cash from a bank account called Ferrari

Autohaus with Wells Fargo. ST JULIEN said that NIDA provided her with the fake ID and bank card, and he gave her instructions to withdraw cash from the account to give to him.

40. According to ST JULIEN, NIDA only paid her "scraps" for her work, compared to the amount of money he made from the fraud schemes.

41. As described by ST JULIEN, the scheme begins with NIDA obtaining identities through his access to LexisNexis and other databases under the business name Onyx Collections & Locators. NIDA would then provide ST JULIEN with fake driver's licenses with her photo and the personal identifying information of the individuals he illicitly obtained from the databases. NIDA would then provide the fake ID's to ST JULIEN with instructions to open and operate fraudulent bank accounts. NIDA would provide ST JULIEN with the fake business name and the stolen identity to be used, along with the corresponding necessary documents including State of Georgia Secretary of State paperwork and the fake ID to be able to open the bank accounts. NIDA would then provide ST JULIEN with the items to be deposited which included fraudulent auto loan checks, stolen U.S. Treasury checks, stolen retirement checks issued to Delta Airlines employees, and checks in the names of real people that were owed unclaimed property from various state and federal government agencies. The following are some of the fraudulent bank accounts discovered in this investigation that included items from the above scheme types.

42. Signature Luxury Imports, listed in paragraph 17, is one of the bank accounts used in NIDA's scheme to negotiate fraudulent auto loan checks. Five (5) fraudulent auto loans,

issued in the names of stolen personal identities, were deposited into this account for a total of $277,000.00.

43. North Point Volvo Inc., listed in paragraph 15, is one of the bank accounts used in NIDA's scheme to negotiate stolen U.S. Treasury checks. Twenty-two (22) stolen U.S. Treasury checks that were issued to individuals and businesses as tax refunds were deposited into this bank account for a total of $271,165.02.

44. Bynum Financial Inc., listed in paragraph 13, is one of the bank accounts used in NIDA's scheme to negotiate stolen retirement and family-care disability and survivorship checks issued to Delta Airlines employees and families. Five (5) of these checks for a total of $10,407.81 were deposited into this bank account, in addition to other funds which appear to have been laundered from other accounts.

45. Universal Tax Group Inc., listed in paragraph 19, is one of the bank accounts used in NIDA's scheme to negotiate unclaimed property checks. Two (2) checks that were issued in the names of individuals that were owed unclaimed property by the State of California were deposited into this account for a total of $15,778.70, in addition to other funds which appear to have been laundered from other accounts.

46. ST JULIEN explained that a preferred scheme of NIDA that has continued since she started working with him in 2009, was to start a fake auto dealership, including having a website created for the fake dealership, opening a corporation through the Georgia Secretary of State in the fake dealership name, and applying for fraudulent auto loans in the names of stolen identities that NIDA acquired through the illicit access to LexisNexis and other databases. Then, NIDA would instruct ST JULIEN to open a bank account in the name of the fake dealership with

a stolen identity and a fake ID provided to her by NIDA. Finally, when NIDA received the fraudulent auto loan checks in the mail, he would provide them to ST JULIEN and instruct her to negotiate them through the bank account and withdraw the funds.

47. According to ST JULIEN, one of the current fake dealerships that NIDA was using to obtain fraudulent auto loans was called Ferrari Autohaus.

48. In August of 2013, your affiant was aware of a bank account at Wells Fargo in the name of Ferrari Autohaus Inc. The bank account Signature Tax Collections Inc. at SunTrust Bank, listed in paragraph 18, had received two wire transfers from a bank account at Wells Fargo in the name of Ferrari Autohaus Inc. in July and August of 2013. The first wire transfer was in the amount of $25,000.00 and the next wire transfer was in the amount of $25,400.00.

49. During the recorded phone calls ST JULIEN made to NIDA, monitored by your affiant and SA Mike Paulhus at the Atlanta Field Office, NIDA discussed details of pending fraudulent auto loans that he had received recently through Ferrari Autohaus, auto lenders including Roadloans.com, and details of future auto loan checks that he was expecting to receive any day now from in the mail.

50. On 09/13/13, ST JULIEN and NIDA, during a recorded phone call, arranged to meet at a familiar store parking lot in Atlanta that afternoon. The meeting was arranged so that NIDA could provide ST JULIEN with the bank debit card to the account Ferrari Autohaus Inc., and ST JULIEN would then go to an ATM to withdraw some cash to confirm the bank account is still open. NIDA wanted to make sure the account was still in good standing before the next fraudulent auto loan check was deposited into it.

51.    Your affiant obtained a federal search warrant for NIDA and his vehicle, and agents of the USSS executed the search warrant that afternoon at the store parking lot where ST JULIEN and NIDA arranged to meet. USSS agents seized several items of evidence, including a bank debit card in the name of Ferrari Autohaus Inc., cell phones, and a laptop computer used by NIDA in furtherance of his fraudulent schemes. NIDA was interviewed by your affiant and SA Mike Paulhus, post Miranda Rights Warning and Waiver, during the search warrant. During the interview, NIDA admitted to ownership of the laptop computer that was seized as evidence.

52.    The laptop computer seized from NIDA was forensically examined by the USSS at the Atlanta Field Office. SA Alan Davis, Electronic Crimes Special Agent Program certified examiner, created an initial examination report with the results of his findings. The results of the initial report contained more than a thousand items of evidentiary interest including copies of fake driver's licenses with the photo of ST JULIEN and the information of stolen identities that have been used in the scheme investigated by your affiant. Other findings include the following:

- Reports from Equifax, Microbilt, and LexisNexis databases were located on the computer that included personal identifying information of dozens of individuals, some of which were known victims discovered previously in your affiant's investigation.

- An image of a handwritten paper with the address of 217 Arrowhead Blvd. in Jonesboro, GA was located on the computer (address for Reliance Recovery where the GOCP conducted the undercover operation against ST JULIEN).

- A copy of a $40,000.00 auto loan check issued to Goodwin Automall Inc. was located on the computer.

- Wells Fargo bank account documents including statements and account information for Signature Tax Collection, Inc., Ferrari Autohaus Inc., and Randall M.

- A loan approval document, dated 08/26/13, from Roadloans.com for Katrina H. for the amount of $38,684.51.

- A copy of a State of Georgia used auto dealer license for Upstate Automotive Group Inc. in the name of April T.

- Copies of buyer's order forms for North Point Volvo and Goodwin Automall.

- Copies of several fake driver's licenses (2 with photos of ST JULIEN, one of which was in the name Tamal R.)

- An Equifax report with the personal identifying information of Molly P.

- A LexisNexis report with the personal identifying information of Angie R-C and Stephen C.

- A word processing document with apparent instructions to "CASH OUT !!!!", followed with SunTrust bank account information for Ferrari Autohaus and Wells Fargo bank information for Euro Autosport, as well as bank information for other entities, including online account logins and passwords, and account numbers.

## CONCLUSION

53.   Based on the above information, Affiant believes NIDA committed acts in violation of Title 18 U.S.C. Sections 641, 1028A, 1344 and 1349.

## **REQUEST FOR SEALING**

54.     I further request that the Court order that all papers in support of this application be sealed until further order of the Court.  These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation